ISMAIL J. RAMSEY (CABN 189820)
United States Attorney

THOMAS A. COLTHURST (CABN 99493)
Chief, Criminal Division

MICHAEL G. PITMAN (DCBN 484164)
Assistant United States Attorney
150 Almaden Boulevard, Suite 900
San Jose, CA 95113
Telephone:     (408) 535-5040
Facsimile:     (408) 535-5081
Email: michael.pitman@usdoj.gov

Attorneys for United States of America

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| UNITED STATES OF AMERICA, | Case No. 5:22-cr-00123-BLF |
|---|---|
| Plaintiff, | UNITED STATES' SENTENCING MEMORANDUM AS TO DEFENDANT DHIRENDRA PRASAD |
| v. | |
| DHIRENDRA PRASAD, | Date:    April 25, 2023<br>Time:    9:00 AM<br>Place:   Courtroom 1, San Jose |
| Defendant. | |

The United States of America ("United States") hereby respectfully submits the following Sentencing Memorandum as to Defendant Dhirendra Prasad ("Defendant") pursuant to Crim. L.R. 32-5(b).

I.     **SUMMARY OF UNITED STATES' SENTENCING RECOMMENDATIONS**

On March 17, 2022, Defendant was charged by Information with one count of Conspiracy to Commit Mail Fraud and Wire Fraud in violation of 18 U.S.C. § 1349 (Count One), two counts of Conspiracy to Commit Money Laundering in violation of 18 U.S.C. § 1956(h) (Counts Two and Three), one count of Conspiracy to Defraud the United States in violation of 18 U.S.C. § 371 (Count Four), and one count of Tax Evasion in violation of 26 U.S.C. § 7201 (Count Five).  On November 1, 2022, Defendant pleaded guilty to Counts One and Four by way of a Plea Agreement entered into pursuant to Rule 11(c)(1)(A) and (c)(1)(B).  In that Plea Agreement, the parties agreed that the adjusted offense

level is 27, that the Court should impose a special condition of supervised release, that the Court will impose restitution of at least $19,270,683 ($17,398,104 to Apple, Inc., and $1,872,579 to the Internal Revenue Service ("IRS")), that Defendant will be ordered to forfeit several assets, and that the United States will recommend a term of imprisonment of no more than 48 months.

The Presentence Investigation Report ("PSR") endorses the Plea Agreement's Guideline calculation, and recommends that Defendant be sentenced to: A below-Guidelines term of imprisonment of 48 months; a three-year term of supervised release (including the special condition of supervised release agreed to by the parties); an order to pay restitution in the amount of $19,270,683 ($17,398,104 to Apple and $1,872,579 to the IRS); an order to forfeit assets; and a special assessment of $200.

The United States is in agreement with the PSR's calculations and recommendations.

## II.     SUMMARY OF THE CASE

The facts of the case are set forth in great detail in the Plea agreement and PSR. In sum, Defendant engaged in two parallel, multi-year conspiracies to steal money from his employer, Apple. Defendant was employed by Apple from December of 2008 through December of 2018. For most of that time, he was a "buyer" in Apple's Global Service Supply Chain. Apple sometimes needs to buy parts to perform warranty repairs on older devices, and when the original manufacturer is unable or unwilling to supply those parts, Apple must acquire them on the open market. It was Defendant's job as an Apple buyer to facilitate that process. As a buyer, Defendant received internal orders from Apple, requested quotes for the required parts from vendors, reviewed the quotes, negotiated terms, selected a vendor, and placed Purchase Orders. Defendant abused his position of trust at Apple by engaging in two separate criminal conspiracies with the owners of vendors Apple did business with, and also evaded tax on the proceeds of his schemes.

The first vendor Defendant conspired with is a company based in Foothill Ranch California, known as CTrends. CTrends was founded, owned, and operated by Don M. Baker, whom Defendant knew. During the years 2013 through 2019, Defendant and Baker worked together to defraud Apple and to share the proceeds using multiple schemes, including: Stealing equipment from Apple and then reselling it to Apple; causing Apple to pay inflated CTrends invoices; and causing Apple to pay CTrends for components which were never shipped, and may have never existed at all. As a result of these

schemes, Apple suffered a loss of no less than $7,833,456, and Defendant and Baker split the proceeds. Between 2013 and 2019, CTrends paid Defendant at least $3,963,806 in connection with the schemes, and Defendant caused shell companies he controlled to issue phony invoices to CTrends to justify those payments and conceal the fact that they were the result of fraud.

The other vendor Defendant conspired with was a company called Quality Electronics Distributors, Inc. ("Quality Electronics"). Quality Electronics was based in Mission Viejo California, and was founded, owned, and operated by Robert Gary Hansen, whom Defendant knew. During the years 2013 through 2019, Defendant and Hansen worked together to defraud Apple, and to share the proceeds, using multiple schemes, including: Causing Apple to pay inflated Quality Electronics invoices; and stealing equipment from Apple and then reselling it to Apple. As a result of these schemes, Apple suffered a loss of no less than $9,564,648, and Defendant and Hansen split the proceeds. Between 2013 and 2019, Quality Electronics paid Defendant at least $4,169,199 in connection with these schemes using checks payable to "cash," or through payments directly to Defendant's creditors on Defendant's behalf.

Although Defendant knew that the proceeds of these schemes were income that should be reported to the IRS, he failed to report a portion of the proceeds as income resulting in a total tax loss of $1,676,936 for the years 2013 through 2018. Additionally, Defendant knew that the phony invoices he caused his shell companies to issue to CTrends were used by Baker to mischaracterize the nature of the payments CTrends made to Defendant to generate fraudulent tax savings, which resulted in a total tax loss of $195,643 for the years 2015 through 2017.

**III.   SENTENCING CALCULATION**

Trial courts, "while not bound to apply the Guidelines, must consult those Guidelines and take them into account when sentencing." *United States v. Booker*, 543 U.S. 220, 267 (2005); *see also Gall v. United States*, 552 U.S. 38, 51 (2007) (failure to calculate, or improperly calculating, the Guidelines range constitutes a procedural error at sentencing).

### A. The Fraud Loss – Count One, 18 U.S.C. § 1349

#### 1. *Fraud Loss Calculation*

The Guidelines provide that conspiracy to commit wire fraud and mail fraud in violation of Section 1349 should be sentenced under USSG § 2B1.1. Because Section 1349 has a statutory maximum term of imprisonment of 20 years or more, the base offense level is 7 under USSG § 2B1.1(a)(1). The Plea Agreement establishes that Defendant's fraud caused a loss to Apple of at least $17,398,104, and Defendant's offense level is consequently increased by 20 levels under USSG § 2B1.1(b)(1)(K).

#### 2. *Specific Offense Characteristics - Abuse of Position of Trust, USSG § 3B1.3*

USSG § 3B1.3 requires an increase in the base offense level if the defendant abused a position of public or private trust, or used a special skill, in a manner that significantly facilitated the commission or concealment of the offense. In this case, Defendant held a position at Apple in which he was given substantial discretion to make autonomous decisions to benefit Apple. Instead, Defendant betrayed Apple's trust, and abused his power to enrich himself at Apple's expense – all while accepting hundreds-of-thousands of dollars' worth of compensation from Apple in the form of salary and bonuses. Additionally, by virtue of his position at Apple Defendant had inside information regarding the company's fraud-detection techniques, and he designed his criminal schemes to avoid those techniques. Thus, the enhancement is justified.

### B. The Tax Loss – Count Four, 18 U.S.C. § 371

#### 1. *Tax Loss Calculation*

The Guidelines provide that Section 371 conspiracies to defraud the United States by impeding the IRS (commonly called "*Klein* conspiracies") should be sentenced under USSG § 2T1.9, which, in turn, provides for a base offense level that is the greater of "(1) [the] [o]ffense level determined from § 2T1.1 or § 2T1.4, as appropriate, or (2) 10." In this case, Section 2T1.1 is the more "appropriate" provision to use. To determine the base offense level under Section 2T1.1, the Guidelines require the calculation of the tax loss attributable to the defendant, and then the application of the tax loss table contained in Section 2T4.1 to set the base offense level.

The tax loss is "the total amount of loss that was the object of the offense (i.e., the loss that

would have resulted had the offense been successfully completed)." USSG § 2T1.1(c)(1). The tax loss attributable to a defendant convicted of a *Klein* conspiracy includes "'all reasonably foreseeable acts and omissions . . . in furtherance of the jointly undertaken criminal activity.'" *United States v. Ladum*, 141 F.3d 1328, 1346 (9th Cir. 1998) (quoting USSG §1B1.3(a)(1)(B)). Defendant's sentence should account for all relevant conduct under USSG § 1B1.3(a), including charged and uncharged conduct, and even acquitted conduct, if proven by a preponderance of the evidence. *See generally United States v. Watts*, 519 U.S. 148, 156-57 (1997) (per curiam); *see also United States v. Mercado*, 474 F.3d 654, 656-57 (9th Cir. 2007). In tax cases, the Guidelines specifically provide for the inclusion of the tax loss resulting from all known tax fraud, in all years, as relevant conduct. *See* USSG § 2T1.1, comment. (n.2). Accordingly, Defendant's tax loss calculation should include the tax loss attributable to Defendant's failure to report income he received as a result of his criminal conduct as well as the tax loss attributable to Baker's mischaracterization of the nature of the payments CTrends made to Defendant – which Defendant facilitated by causing his shell companies to issue phony invoices to CTrends.

The parties have agreed that Defendant's failure to report as income all the proceeds of his criminal activity resulted in a total tax loss of $1,676,936, and that Baker's mischaracterization of the nature of the payments CTrends made to Defendant resulted in a total tax loss of $195,643. Thus, the total tax loss is $1,676,936 + $195,643, which equals $1,872,579.

    **2.**    *Specific Offense Characteristics - Illegal Source Income, USSG § 2T1.1(b)(1)*

USSG § 2T1.1(b)(1) requires an increase in the base offense level if the defendant failed either to report or correctly identify the source of income of over $10,000 in any year resulting from criminal activity. This enhancement is found in USSG § 2T1.1 (the Guideline governing most Title 26 violations), and not in USSG § 2T1.9 (the Guideline governing Section 371 *Klein* conspiracies). However, USSG § 2T1.9 incorporates the "[o]ffense level determined from § 2T1.1 or § 2T1.4, as appropriate," and courts have imposed enhancements from USSG §§ 2T1.1 and 2T1.4 when sentencing defendants convicted of Section 371 *Klein* conspiracies. *See, e.g., United States v. Petrosian*, 446 F. App'x 826, 829 (9th Cir. 2011) (unreported) (affirming 2T1.4(b)(2) enhancement for defendant convicted under Section 371). An enhancement under Section 2T1.1(b)(1) applies if the Court finds by a preponderance of the evidence that defendant failed to report income of over $10,000 in any year

resulting from criminal activity. Here, the enhancement applies because Defendant failed to report at least $10,000 of income generated by his criminal activity during each of the years 2013 through 2018.

### C. Grouping

Pursuant to USSG § 3D1.2, Counts One and Four are not grouped together because they involve different harms to different victims. Because the offense levels for the two groups are within 5 to 8 levels of each-other, the two groups combined result in 1.5 units under USSG § 3D1.4(b), which results in an increase of 1 level under USSG § 3D1.4.

### D. Acceptance of Responsibility

Defendant should receive a three-point credit for acceptance of responsibility under USSG § 3E1.1. Credit for acceptance of responsibility applies only to a defendant who "clearly demonstrate acceptance of responsibility for his offense." USSG § 3E1.1. In evaluating whether the credit should apply, it is appropriate to consider whether the defendant has truthfully admitted the conduct comprising the "offense(s) of conviction," and also truthfully admitted, or not falsely denied, any relevant conduct. *Id*. comment. (n.1(A)). Here, the full three-point credit is appropriate because Defendant has truthfully admitted the relevant conduct sufficiently in advance of trial. The Court should not hesitate to grant the full, three-point credit in this case.

### E. Resulting Guidelines Calculation

The Plea Agreement, the PSR, and the United States all agree that Defendant's adjusted offense level is 27. Because Defendant is in Criminal History Category I, the sentencing table recommends a sentence between 70 and 87 months.

## IV. SECTION 3553(a) FACTORS

Pursuant to the Sentencing Reform Act, 18 U.S.C. § 3553, the Court "shall impose a sentence sufficient, but not greater than necessary, to comply with the purposes set forth in" Section 3553(a)(2), and, in so doing, the Court "shall consider," among other things: (1) the nature and circumstances of the offense and the history and characteristics of the defendant; (2) the need for the sentence imposed; (A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense; (B) to afford adequate deterrence to criminal conduct; (C) to protect the public from further crimes of the defendant; and (D) to provide the defendant with needed educational or vocational

training, medical care, or other correctional treatment in the most effective manner; (3) the kinds of sentences available; (4) the kinds of sentence and the sentencing range established by the guidelines; (5) any pertinent policy statement; and (6) the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct. *See* 18 U.S.C. § 3553(a). In this case, these factors support the sentence recommended by the United States and the PSR.

The nature and circumstances of the offenses are extremely serious: A $17,398,104 fraud loss speaks for itself. The history and characteristics of Defendant are also troubling. Defendant's crimes were not crimes of opportunity or actions taken for self-preservation, they were not born out of economic desperation or the product of a brief lack of judgment. To the contrary, they were part of a long-term, multi-faceted criminal endeavor during which Defendant enriched himself by taking advantage of those who trusted him, and by contributing to the corruption of others.

On the other hand, Defendant's acceptance of responsibility has been exemplary. Many white-collar criminals simply refuse to ever acknowledge that they have done anything wrong. Not Defendant. His acceptance of responsibility, which should be a model for other criminal defendants, is evidenced not only by his prompt guilty plea and fulsome admission of his criminal conduct, but also by his acceptance of significant restitution obligations, and stipulation to the forfeiture of several valuable assets. While it is unlikely that Defendant's victims will ever be made completely whole, it is anticipated that the liquidation of forfeited assets will significantly impact Defendant's restitution obligations. And while the contemplated forfeiture may not capture all of the assets tied to Defendant's criminal conduct, Defendant has not obstructed the government's efforts to use the tools at its disposal to locate and encumber forfeitable assets. On balance, the sentence recommended by the United States and the PSR is appropriate to satisfy the purposes set forth in Section 3553.

## V.  RESTITUTION

The Plea Agreement, the PSR, and the United States all agree that Defendant should be ordered to pay restitution in the amount of $19,270,683 ($17,398,104 to Apple and $1,872,579 to the IRS).

For Count One, restitution is appropriate under the Mandatory Victim Restitution Act of 1996 ("MVRA") (largely codified at 18 U.S.C. § 3663A), which makes restitution mandatory for certain crimes. *See United States v. Kovall*, 857 F.3d 1060, 1064 (9th Cir. 2017) (the district court has no

discretion under the MVRA and "shall order" restitution) (quoting 18 U.S.C. § 3663A(a)(1), (c)(1)(A)); *see also United States v. Lo,* 839 F.3d 777, 788 (9th Cir. 2016) ("[W]hen the crime of conviction is mail fraud or other crime requiring proof of a scheme, a court is authorized to order restitution 'on related but uncharged conduct that is part of a fraud scheme,' and is not limited to 'the harm caused by the particular counts of conviction.'") (quoting *United States v. Thomsen*, 830 F.3d 1049, 1065 (9th Cir. 2016)); *see also United States v. Johnson*, 875 F.3d 422, 425 (9th Cir. 2017). Thus, the Court's restitution order in this case should not be limited to any specific transaction, but should encompass the entire loss suffered by Apple as a result of all of Defendant's criminal schemes targeting the company which equals $17,398,104.

For Count Four, restitution is also appropriate under the MVRA, which covers charges under Section 371. *See United States v. Meredith*, 685 F.3d 814, 827 (9th Cir. 2012). The amount of restitution is usually limited to losses caused by the specific conduct underlying the offense of conviction (not including relevant conduct), plus prejudgment interest. *See United States v. Gordon*, 393 F.3d 1044, 1058-1060 (9th Cir. 2004) (prejudgment interest is necessary to make the victim whole). However, when the count of conviction includes a scheme, conspiracy, or pattern of criminal activity as an element of the offense, as in a conspiracy to defraud in violation of Section 371, the restitution order may include losses caused by acts of related conduct for which the defendant was not convicted. 18 U.S.C. § 3663(a)(2); *Meredith*, 685 F.3d at 827. Here, Defendant should be ordered to pay restitution to the IRS to compensate for the actual loss caused by the conspiracy which equals $1,872,579.

To assist the clerk of court in processing restitution payments, the United States requests the Court include the IRS's centralized location for collection of restitution payments in the judgment:

> IRS - RACS
> Mail Stop 6261, Restitution
> 333 W. Pershing Ave.
> Kansas City, MO 64108

If the Court orders Defendant to pay restitution to the IRS, the IRS will use the restitution order as the basis for a civil assessment. *See* 26 U.S.C. § 6201(a)(4). Defendant does not have the right to challenge the amount of any restitution-based assessment. *See* 26 U.S.C. § 6201(a)(4)(C). Neither the existence of a restitution payment schedule, nor Defendant's timely payment of restitution according to

that schedule, will preclude the IRS from immediately collecting the full amount of any restitution-based assessment, including by levy and destraint under 26 U.S.C. § 6331. Interest on any restitution-based assessment will accrue under 26 U.S.C. §§ 6601 and 6621 from the last date prescribed for payment of the liability that is the subject of the restitution order to the date the IRS receives payment.

## VI.   FORFEITURE

The United States respectfully requests that, in accordance with the Plea Agreement, the Court order forfeiture as contemplated by the Preliminary Order of Forfeiture issued by the Court in this matter on November 29, 2022 (Doc. No. 33).

## VII.   CONCLUSION

Defendant should be sentenced to: A term of imprisonment of 48 months; a three-year term of supervised release (including the special condition of supervised release agreed to by the parties); an order to pay restitution in the amount of $19,270,683 ($17,398,104 to Apple and $1,872,579 to the IRS); an order to forfeit assets; and a special assessment of $200.

Respectfully submitted,

ISMAIL J. RAMSEY
United States Attorney

s/ Michael G. Pitman
MICHAEL G. PITMAN
Assistant United States Attorney

Attorneys for United States of America