Christopher J. Cannon (No. 88034)
SUGARMAN & CANNON
737 Tehama Street, No. 3
San Francisco, CA. 94103
Telephone: (415) 362-6252
Facsimile: (415) 362-6431
E-mail: chris@sugarmanandcannon.com

Attorney for Defendant
      DHIRENDRA PRASAD

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE VENUE

| UNITED STATES OF AMERICA, | ) | Case No. 22-CR-00123-BLF |
|---|---|---|
| Plaintiff, | ) | **SENTENCING MEMORANDUM** |
| v. | ) | |
| DHIRENDRA PRASAD, | ) | |
| Defendant. | ) | |

## I.    INTRODUCTION

      Dhirendra Prasad is 53-year-old, hard-working man who immigrated to the United States and become a respected member of the business community. He has a stable relationship with his wife and is the devoted father of 15 year old twins.

      The probation report recognizes that Mr. Prasad has taken his conduct extremely seriously and is unlikely to reoffend. He has learned from his errors and has performed well on pretrial supervision.

      The Guidelines in this case allow for a sentence of probation, and the circumstances surrounding Prasad's crimes, Prasad's medical conditions, and his 53 years of good conduct support a substantial variance for Prasad's aberrant conduct. See USSG 5K2.20. While the "loss" numbers in this case are steep, that "loss" overstates the harm of Prasad's conduct, which was not material to Apple.

Accordingly, we request the Court impose a sentence of 36 months in this case, and recognize that the acts that led to this conviction were aberrant and atypical and that there is no necessity for a more severe prison sentence in this case.

## II. THE LOSS NUMBERS OVERSTATE THE SERIOUSNESS OF THE CONDUCT IN THIS CASE.

In his plea agreement, Mr. Prasad admitted his conduct led to a loss amount between $9,500,00 and $25,000,000 and a tax loss of between $1,500.000 and $3,500,000.  Those numbers, however, overestimate the seriousness of the conduct for two reasons.  One, the loss was not material to Apple, and two, and the "loss" has been partly calculated by the funds paid to Prasad and his conspirators, rather than as an actual loss to Apple.  That calculation of loss has been rejected by United States v. Banks, 55 F. 4th 246 (3rd Cir. 2023).  The bottom line is that the loss numbers used to calculate the Sentencing Guidelines grossly overstate the economic harm caused by Prasad's conduct, and this case should be treated far differently than a theft of a similar amount.

## III. A DOWNWARD DEPARTURE OR VARIANCE IS APPROPRIATE IN THIS CASE.

### A. A DOWNWARD DEPARTURE OR VARIANCE IS APPROPRIATE UNDER 18 U.S.C. § 3553.

In Booker, the Supreme Court held that district courts must consider the guideline range as advisory, not mandatory, and that they must also consider the other directives set forth in 18 U.S.C. § 3553(a).  United States v. Booker, 543 U.S. 220 (2005).

Section 3553(a) requires courts to "impose a sentence sufficient, but not greater than necessary," to comply with the four purposes of sentencing set forth in Section 3553(a)(2):

> (a) retribution (to reflect seriousness of the offense, to promote respect for the law, and to provide "just punishment");

(b) deterrence;

(c) incapacitation ("to protect the public from further crimes"); and

(d) rehabilitation ("to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner").

The sufficient-but-not-greater-than-necessary requirement is often referred to as the "parsimony provision." The parsimony provision is not just another factor to be considered along with the others set forth in Section 3553(a) – it sets an independent limit on the sentence a court may impose. Kimbrough v. United States, 552 U.S. 85, 101 (2007) (referring to the clause as an "overarching provision" that, post-Booker, "permits the court to tailor the sentence" to the individual defendant and crime in light of the goals of the Sentencing Reform Act of 1984). The overarching statutory charge for a district court is to "impose a sentence sufficient, but not greater than necessary" to reflect the seriousness of the offense, promote respect for the law, and provide just punishment; to afford adequate deterrence; to protect the public; and to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment. 18 U.S.C. § 3553(a) and (a)(2). United States v. Carty, 520 F.3d 984 (9th Cir. 2008). "In this sense, the Guidelines are the starting point and the initial benchmark and are to be kept in mind throughout the process." Id. (internal quotations and citations omitted). But the Court "may not presume that the Guidelines range is reasonable" and may not afford the Guidelines suggestion any more or less weight than the other section 3553 factors. Id.

The Sentencing Commission itself has recognized the need for alternative sentences that do not involve a prison term, stating:

> Effective alternative sanctions are important options for federal, state, and local criminal justice systems. For the appropriate offenders, alternatives to incarceration can provide a substitute for costly incarceration. Ideally, alternatives also provide those offenders with opportunities by diverting them from prison (or reducing time spent in prison) and

into programs providing the life skills and treatment necessary to become law-abiding and productive members of society.
https://www.ussc.gov/research/research-publications/2009-report-alternative-sentencing-federal-criminal-justice-system

In this case, a three year sentence is more than sufficient to satisfy the goals of sentencing.

In determining if the sentence is minimally sufficient to comply with the purposes of sentencing outlined in Section 3553(a)(2), a court should consider several factors listed in Section 3553(a).  These are:

(1) the nature and circumstances of the offense and the history and characteristics of the defendant;

(2) the kinds of sentence available;

(3) the guidelines and policy statements issued by the Sentencing Commission, including the (now non-mandatory) guideline range;

(4) the need to avoid unwarranted sentencing disparity; and

(5) the need to provide restitution where applicable.  18 U.S.C. § 3553(a)(1)

Neither the statute itself nor <u>Booker</u> suggests that any one of these factors is to be given greater weight than any other factor.  However, it is important to remember that all factors are subservient to Section 3553(a)'s mandate to impose a sentence not greater than necessary to comply with the four purposes of sentencing.

Here, all of the Section 3553 factors call out for a lenient sentence in this case.

**B. THE NATURE AND CIRCUMSTANCES OF THE OFFENSE AND THE OFFENDER INDICATE THAT A SENTENCE OF 36 MONTHS IS APPROPRIATE IN THIS CASE.**

As we indicated above, the harm to Apple was not material and Apple did not file an 8-K indicating that it had been materially damaged by Prasad's conduct.  Prasad let his greed

overwhelm his good sense, and he has already paid a huge price for his terrible decision.  These crimes are inconsistent with Prasad's long history of hard work and service to the community.

The attached letters from Prasad's friends, family, and supporters provide evidence that Prasad was not and is not a threat to the community.

The details of those letters are significant.  The authors consistently note Prasad is hard-working, an upstanding member of the community, and feels remorse for his crimes.  Nevertheless, to his neighbors and the people who know him, Prasad's crimes pale when compared to the good he has done by helping the community, family, and friends in times of need.

Antonia Saraiva wrote: "Prasad is a good man.  A family man.  A man who made a HUGE mistake.  And a man who took responsibility for his actions."  Prasad is a "caring person who always went out of his way to help others."

Over the years, Prasad has donated dinners and groceries to the McHenry House Tracy Family Shelter to help people less fortunate than himself.

According to Hung Ngo, Prasad "donates to charitable causes, volunteers and is very much loved by those around him."

The letter from Manpreet Nagi also reflects Prasad's charitable work, the numerous hours of volunteer work he has done, and points out that "If I ever need help for the families, he is the first one I reach to."

The letter from Parmjit Singh, while short, demonstrates the character of Prasad.  Prasad randomly met Mr. Singh when Singh was having car trouble.  Prasad went out of his way to assist a man he had never met before, simply because the man needed assistance. Since that initial meeting, Prasad has continued to help Mr. Singh with any technical issues that he faces.  This type of interaction is far more typical of Prasad than the actions which led to him being before this Court.

The letter from Sukhvinder Singh demonstrates the positive effect Prasad has had on others. Prasad's actins led Singh to also start "donating and helping people in need."

The letters from Prasad's coworkers, like Ty Thai and the previously mentioned Antonia Saraiva, demonstrate that in the workplace Prasad is supportive and helpful to his coworkers and has gone out of his way to help them be better employees.

Finally, the letter from his wife, Sherry Smith, demonstrates that there is far more to Dhirendra Prasad than his criminal activities. His wife, the one who knows him intimately, and will have to cope with his absence, still believes his good qualities overwhelm his bad decisions.

The people who know him best know he is a valued member of the community and a positive force in his neighborhood. Sending him to prison will impoverish those who deal with him daily.

Finally, Prasad has done all he can to make restitution in this matter. Instead of fighting the forfeitures, he has actively participated in the sales of several properties and has worked to pay as much restitution as possible. He has forfeited bank and retirement accounts worth more than $4 million. He is almost ready to close on the sale of the property at 135 East Kavanagh Avenue in Tracy, California, and the entire $600,000.00 from that sale will go directly to the government. Similarly, Prasad is preparing to close on the Palomar property to generate an additional $635,000.00 in restitution. Even before he entered into a plea agreement, he worked with the government to sell the Cotton Court property, realizing $510,000.00 for the government.

As the Court is aware and as the Supreme Court has recognized, although the MVRA requires restitution to be imposed, "more than 90% of criminal restitution is never collected". Citing (GAO Report 8-203, 2018) (explaining that the Justice Department considers 91% of outstanding criminal restitution to be "uncollectible"). Lagos v. United States, 138 S. Ct. 1684, 1689 (2018).

Here, Prasad has made extraordinary efforts to provide restitution for his crimes.

### C. THE GUIDELINES THEMSELVES RECOGNIZE THE OFFENSE LEVEL MAY OVERSTATE THE SERIOUSNESS OF THE OFFENSE.

Although the loss as calculated under the Sentencing Guidelines in this case is far from trivial, the Application Notes to the Guidelines recognize that "There may be cases in which the offense level determined under this guideline substantially overstates the seriousness of the offense. In such cases a downward departure is warranted." U.S.S.G. § 2B1.1 Application Note 19(c). On the facts of this case, the unmitigated application of the Guidelines sentence would substantially overstate "the nature and circumstances of [the] offense [and] ... the need for the sentence imposed ... to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense." See United States v. Amezcua-Vasquez, 567 F.3d 1050 (9th Cir. 2009). Dhirendra Prasad did not hurt any individuals; and the effects of his fraud on any institution was not material.

### D. THE SERIOUS SOCIAL CONSEQUENCES AND FINANCIAL PENALTIES IN THIS CASE ARE SUFFICIENT TO DETER MR. PRASAD AND OTHERS.

There is no need for a lengthy prison sentence to deter others from similar conduct. The United States Attorney's Office has issued two press releases that have sent out a strong message that theft from employers will be prosecuted. Those press releases led to the loss of Prasad's job. The government's prosecution and public messaging have already served to deter similar conduct. Sending Dhirendra Prasad to prison for a long period of time will not add to the deterrent value of his conviction and financial devastation. This was an economic crime designed to make a profit. Instead, Dhirendra Prasad has lost it all.

### F. THERE IS LITTLE CHANCE OF RECIDIVISM IN THIS CASE.

Dhirendra Prasad's experience throughout the entire process, from the investigation through the entry of his plea, has terrified him and left him depressed. His deeply damaged psyche springs not only from the fear of consequences for himself, but also from the personal shame he has brought to his family and his concern for their emotional and financial welfare.

SENTENCING MEMORANDUM
Case No. 22-CR-00123-BLF

7

For someone without a serious criminal record, his convictions serve as an unwavering reminder to him and a social brand informing others of his misdeeds. All too often, when navigating a criminal investigation, indictment, and pending conviction, individuals fall apart and find themselves in further legal trouble. Mr. Prasad has, on the other hand, remained a contributing member of society by staying out of trouble and taking care of his family.

Finally, Mr. Prasad's age and experience reduce the chances of recidivism. Prasad is now 53 and has an uncertain future. He recognizes and regrets the cost of his conduct. His financial devastation and diminished future have taught him a valuable lesson, and it is highly improbable that a similar constellation of circumstances could arise to tempt Prasad in the future. Research regarding white-collar offenders found no difference in the deterrent effect of probation and that of imprisonment. See David Weisburd et al., Specific Deterrence in a Sample of Offenders Convicted of White-Collar Crimes, 33 Criminology 587 (1995); see also Zvi D. Gabbay, Exploring the Limits of the Restorative Justice Paradigm: Restorative Justice and White Collar Crime, 8 Cardozo J. Conflict Resol. 421, 448-49 (2007)("[T]here is no decisive evidence to support the conclusion that harsh sentences actually have a general and specific deterrent effect on potential white-collar offenders."). Accordingly, there is no need for a lengthy prison sentence in this case.

## IV.     CONCLUSION

Dihendra Prasad has learned an important lesson. His life, and the lives of members of his family, have been forever changed. A three year prison term is more than enough to punish Prasad's conduct and deter others from similar conduct. A felony conviction and a devasted life sends a strong message that theft from your employer is unacceptable and criminal. Prasad has already been severely punished for his actions and will not be in a position in the future where he could commit a similar crime.

Case 5:22-cr-00123-BLF   Document 40   Filed 04/18/23   Page 9 of 9

Accordingly, we respectfully submit that a sentence of 36 months is sufficient to satisfy all the goals of the sentencing process; and hopefully will allow Dihendra Prasad to be released in time to provide support to his twins and his wife while the twins are in college years, and allow Prasad to get back in the work place and continue with his extraordinary efforts to make restitution.

Dated: _____                    Respectfully submitted,

                                                                        /s/
                                           Christopher J. Cannon
                                           Attorney for DHIRENDRA PRASAD